**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **Christopher M. Phillips,**    ) | **Civil Case No. 2:15-cv-3359-MBS-MGB** |
|                                  ) | |
| **Plaintiff,**  ) | |
| v.                               ) | |
|                                  ) | **REPORT AND RECOMMENDATION** |
| **Sheriff Bruce Bryant,**        ) | |
|                                  ) | |
| **Defendant.**  ) | |
| _____) | |

Christopher M. Phillips has filed a complaint pursuant to 42 U.S.C. § 1983. He is incarcerated, and is proceeding *pro se* and *in forma pauperis*. This matter was referred to the Magistrate Judge for review. Pursuant to the provisions of 28 U.S.C. §636(b)(1)(B), and Local Rule 73.02(B)(2) (D.S.C.), the Magistrate Judge is authorized to review such complaints for relief and to submit findings and recommendations to the District Judge. Having carefully reviewed the record, the Magistrate Judge recommends that the complaint be **summarily dismissed** with prejudice, and without service of process, for the following reasons:

I.  Liberal Construction of Pro se Pleadings

Pro se pleadings are given liberal construction and are held to a less stringent standard than formal pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). However, "[t]he 'special judicial solicitude' with which a district court should view ... pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." *Weller v. Dept. of Soc. Servs. for City of Baltimore,* 901 F.2d 387, 391 (4th Cir.1990). Giving "liberal construction" does not mean that the Court can ignore a petitioner's clear failure to allege facts that set forth a cognizable claim. *United States v. Wilson*,

699 F.3d 789, 797 (4th Cir.2012). "Principles requiring generous construction of pro se complaints ... [do] not require ... courts to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).

II.  Background and Factual Allegations

Plaintiff (booking number 2014-2848) is a detainee at the York County Detention Center in South Carolina. He was arrested on April 21, 2014 and has been criminally charged with "Burning Crops And Other Kind Of Personal Property," Arson 3rd Degree, and "Larceny/Petit or Simple Larceny - $2,000 or less (Enhancement per 16-1-57)."[1] Since his arrest on state charges, plaintiff has filed three actions in this federal court. This court may take judicial notice of those records. *See, e.g., Assa'ad-Faltas v. South Carolina*, 2012 WL 6103204 (D.S.C.), *adopted by* 2012 WL 6106421 (D.S.C.) (J. Wooten) (observing that a court has "the right to take notice of its own files and records").

First, on July 22, 2015, plaintiff filed a petition pursuant to 28 U.S.C. § 2241 (Case No. 2:15-cv-2858-MBS-MGB). He indicated that he is "assigned to the special needs unit maximum security level for mental health observation." In the petition, he claimed that the Sixteenth Circuit Solicitors Office has "seditiously conspired in violation of due process to bring my case before a trial by jury." He made other nonsensical allegations, including that he is married to the entertainer Alicia Keyes and has eight billion dollars in assets. Even liberally construing it, the petition asserted no coherent claims. On August 21, 2015, plaintiff submitted a letter, advising that he "shall serve the full term of my life as a United States Federal Judicial Official presently awaiting a United States Senate Confirmation." He asserts that President George W. Bush, Jr.

---

[1] See http://www.yorkcountysheriff.com/inmate/default.aspx.

appointed him in 2008. He signed the letter "Strategically Regulated, Judge Christopher M. Phillips." Plaintiff indicates he has also sent written reports to public figures, such as Antonio Scalia and South Carolina Governor Nikki Haley. The Magistrate Judge filed a Report and Recommendation on September 2, 2014, recommending summary dismissal without prejudice.

Plaintiff filed two sets of objections, indicating: "I am the recipient of a federal tax joinder, sponsorship, and commercial credits, as the upcoming recording artist to be known as: Christos Keys/ASAR FALASHA RECORDS + DISTRIBUTION….AKA Tammuz. Oprah Winfrey and the …[illegible] Network as under future Contract obligations to confirm the agreement and Challenges face by Alicia and I in a televised special." (Case 2:15-cv-02858-MBS-MGB, DE# 18). He also included several letters with several outline drawings of a hand, with various symbols and random incoherent references to "stock of accumulated goods," the value per music composition ($3,000,000.00), his Facebook username, the word "jihad," and "the soul at rest." (*Id*.). On the hand outline drawings, he indicates the "Tribal Crest is a Royal Loop which is depicted on the <u>receiving hand</u> of the Tribal Chief of Qadeyezoin" and the "left hand is the signature of National Defense upon the United States Seal." (DE# 14, emphasis and capitals in original). He states he is "Imam Isa Ali Kahem Ahmad" and "Christopher Keyes." He also included a sheet of mental "powers" at various times of day, stating that "this sums up the Angelic order of the Tetragrammaton." He signed the objections as "Christopher M. Phillips, International Accountant, Bank of Switzerland!"

Second, on August 24, 2015, plaintiff filed the present action pursuant to 42 U.S.C. § 1983 (Case No. 2:15-cv-3359-MBS-MBG). Plaintiff indicates that he seeks to litigate issues of "negligence of duty/public safety violations/abridgment of privileges." (DE# 1, ¶ IIB). He alleges that the "defendants have failed to render sufficient service checks regarding the

maintenance of security operations" which has "resulted in the abridgement of privileges owed by tax break and acts prohibited such as libel, slander, and defamations." (DE# 1, ¶ IV). He alleges the existence of a "seditious conspiracy to interfere in a Seven Year Preliminary Federal Investigation and a Civil Case pending in the 4th Circuit federal Court of Appeals." (*Id*., as in original). He claims he was "fraudulently charged" and "committed to a maximum security special needs unit by the York County Moss Justice Center Classification Committee." (*Id*.). He complains that he has been verbally taunted by other unspecified detainees and believes that "persons have been strategically assigned by the Classification Department and Sr. Detention Center officials seeking to induce Conflicts, Controversies, and entertainment." (*Id*.). For relief, he seeks "a full scale investigation regarding all facts stated!" He asks for monetary damages in the amount of 12 billion dollars "FREE AND CLEAR," complete press coverage, "a collateral proceeding to include all land, stock, and real properties," and immediate release from detention. He also asks for a new judge and a trial date in his pending state criminal case. Finally, he asks that the bar against his access to his "Civil Benefits, Federal Benefits, and earned income … be lifted!" (*Id*.). The present Report and Recommendation concerns this second action (Case No. 2:15-cv-3359-MBS-MBG).

Third, on September 2, 2015, plaintiff filed another case pursuant to 42 U.S.C. § 1983 (Case No. 2:15-cv-3527-MBS-MGB). Plaintiff listed his issues as "food quality, food quantity/oppression/malice/conditions of confinement." He complained that he has been served some cold meals on Styrofoam trays, that "missing entries such as cake and cookies" have been a "regular occurrence," that he was confined to "lock-up status," that his "acknowledgement as a United States Federal Regulator [federal judge] was mocked" by unidentified persons, that the Sheriff has been "negligent" in "preservation of injury in regards to the proper maintenance and

service checks of department functions," and that he was not given a grievance form. (Case No. 2:15-cv-3527-MBS-MGB, DE# 1, ¶ IV "Statement of Claim"). For relief, he asked for monetary damages of two billion dollars "$2,000,000,000.00 – FREE AND CLEAR," reclassification to the "General Population" in prison, public reprimand of the defendant sheriff and "third party defendants listed by title" (there were no other defendants), and "regulation reports submitted to the United States Justice Department, Senate, and Supreme Court are petitioned by request to be admitted as material witness statements." (*Id*., ¶ V "Relief"). The Magistrate Judge entered a separate "Report and Recommendation" on October 1, 2015 in the third case (2:15-cv-3527-MBS-MGB, DE#8).

III.  Relevant Statutory Law

    A.  Screening of Pro Se Prisoner Complaints

Under established local procedure in this judicial district, the Magistrate Judge has carefully reviewed this pro se prisoner complaint pursuant to 28 U.S.C. § 1915 and in light of the following precedents: *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); and *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978).

The Prison Litigation Reform Act ("PLRA") permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. 28 U.S.C. § 1915(a)(1). To protect against possible abuses of this privilege, the statute allows the court to dismiss the case upon finding that the action is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §1915(e)(2)(B). A finding of frivolity can be made where the complaint lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25,

31 (1992). Under 28 U.S.C. §1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed sua sponte "at any time." *Neitzke*, 490 U.S. 319. The PLRA also provides for the screening of complaints "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).

B. The PLRA's 3-strike provision

The PLRA, at 28 U.S.C. § 1915(g) provides that:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

*See McLean v. United States*, 566 F.3d 391 (4th Cir.2009). "[I]f a prisoner has already had three cases dismissed as frivolous, malicious, or for failure to state a claim for which relief may be granted, the prisoner generally may not proceed IFP but rather must pay up-front all filing fees for his subsequent suits." *Blakely v. Wards*, 738 F.3d 607, 609 (4th Cir.2013), as amended (Oct. 22, 2013). This means that, after receiving three strikes, plaintiff will have to pay the full filing fee for almost any future non-habeas civil action he might wish to file. *Id*. at 610. Plaintiff is warned that if he continues to file pleadings that are frivolous, malicious, or fail to state a claim for which relief may be granted, he risks the accumulation of three strikes against him and the resulting denial of future requests for IFP status, absent exceptional circumstances.

IV. Analysis

Plaintiff brings this action under 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting

under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). In this § 1983 action, plaintiff has sued one defendant -- Sheriff Bruce Bryant -- for what he describes as "negligence of duty/public safety violations/abridgment of privileges." (DE# 1, ¶ IIB).

    A. "Negligence of duty/public safety violations"

Plaintiff alleges that the "defendants have failed to render sufficient service checks regarding the maintenance of security operations" which has "resulted in the abridgement of privileges owed by tax break and acts prohibited such as libel, slander, and defamations." (DE#1, ¶ IV).[2] Plaintiff's Complaint sheds no light on what he means by "service checks," how this would relate to "the maintenance of security operations," or why he believes this would provide any basis for a § 1983 cause of action. It is unclear why "tax breaks" would have anything to do with conditions of confinement. Although plaintiff complains that "the full names of the Chief Administrator, Assistant Administrator, and Security Commander has (sic) been concealed to the General Population" (DE#1, ¶ IV), this states no constitutional violation for purposes of § 1983. Even liberally construing the pro se Complaint, it is not possible to discern a plausible claim from such disjointed allegations. The United States Supreme Court has made clear that a plaintiff must do more than make conclusory statements to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Although the plaintiff generally complains about the "maintenance of security operations," the United States Supreme Court has emphasized that "prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Plaintiff's reference to

---

[2] Although plaintiff refers to plural defendants, only one defendant -- Sheriff Bryant -- is named in the caption of the Complaint.

"the abridgement of privileges owed by tax break" is nonsensical. To the extent he refers to the terms "libel, slander, and defamations," these are state causes of action, not constitutional violations. To the extent he may be complaining that other inmates have taunted and "defamed" him, he has already been placed in protective segregation (which he also complains about). The Complaint fails to plead any relevant facts that would support a plausible claim under § 1983, and thus, is subject to summary dismissal for "failure to state a claim for relief." The Complaint lacks any basis in fact or law, and thus, is also frivolous.

B. <u>Abridgment of privileges due to placement in "Special Needs Unit"</u>

Plaintiff's allegations are difficult to follow, but he appears to complain that he was "committed to a maximum security special needs unit by the York County Moss Justice Center Classification Committee." Such units are generally reserved for inmates recovering from illnesses, needing mental health observation, and/or needing protective separation from other inmates. *Williams v. Branker*, 462 F.App'x 348 (4th Cir. 2012). The assignment of plaintiff to the "Special Needs Unit" appears intended to protect him from any harm in the general population and for observation of his mental condition. Such assignment cannot be said to be a result of deliberate indifference on the part of Sheriff Bryant or any other prison official. *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (the subjective component of the Eighth Amendment inquiry takes into consideration "threats to ... safety ... as reasonably perceived by the responsible officials on the basis of the facts known to them"); *Branker*, 462 F.App'x at 356 (affirming dismissal of mentally ill prisoner's § 1983 suit challenging his placement in "segregated confinement" for his own protection and the protection of others).

Although plaintiff complains that he would have more privileges in the general population, confinement in protective segregation does not violate a prisoner's constitutional

rights. *Allgood v. Morris*, 724 F.2d 1098, 1100 (4th Cir. 1984). Plaintiff has indicated that he was assigned to such unit "for mental health observation." Plaintiff acknowledges that "my celebrity status and intriguing yoga practices has (sic) served as grounds which might be considered justifiable for my custody status." (DE# 11 at 1). His allegation that he has been verbally taunted by other unspecified detainees suggests an additional (and appropriate) reason for being placed in protective segregation from the general population of inmates.

Although plaintiff complains that he would have more "privileges" if housed in the general prison population, the Fourth Circuit Court of Appeals has observed that "the differences in treatment among prisoners in protective segregation and in the general population has a substantial, rational basis in the legitimate state interest of prison security." *Allgood*, 724 F.2d at 1100. The restrictions of protective custody "are unfortunate concomitants of incarceration; they do not, however, typically constitute the extreme deprivations ... required to make out a conditions-of-confinement claim." *In re Five Percenters*, 174 F.3d 464, 472 (4th Cir. 1999), *cert. denied*, 528 U.S. 874 (1999) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992)). Plaintiff's Complaint does not allege any "atypical and significant hardships" as a result of such assignment. The loss of some privileges due to assignment to the "Special Needs Unit" for readily apparent reasons does not constitute an "extreme deprivation" of minimal civilized necessities. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Plaintiff does not contend that Sheriff Bryant has failed to provide him with "adequate food, clothing, shelter, and medical care" or protection from harm. *Id*. His temporary placement in protective segregation does not amount to "cruel and unusual punishment."

To the extent plaintiff alleges that "persons have been strategically assigned by the Classification Department and Sr. Detention Center officials seeking to induce Conflicts,

Controversies, and entertainment," this vague allegation unsupported by any facts, and in fact, is contradicted by the Complaint itself (which indicates proper reasons why he was placed in protective segregation). The Complaint fails to state a claim for any sort of constitutional violation. The Complaint lacks any basis in fact or law, and thus, is also frivolous.

    C.  <u>Jail preference/conditions of confinement</u>

In a supplemental document entitled "Federal Case Note Summary" (DE# 11), plaintiff presents a laundry list of complaints about his conditions of confinement at the York County Detention Center. He indicates that "cruel and unusual punishment has been applied compared to the average standard imposed by my short stay within the Charlotte Mecklenburg County jail." Plaintiff appears to be complaining that the Charlotte Mecklenburg County Jail had better conditions and that he prefers such jail. His preference is unavailing, as a prisoner has no right to be detained in the jail of his choice. Any past conditions that he may have experienced at another jail are irrelevant; only current conditions at the York County Detention Center are relevant here.

Although plaintiff's supplemental document is captioned with the case number of the present case, it refers to plaintiff's other § 1983 case, in which he complained about "food quality, food quantity/oppression/malice/conditions of confinement." Plaintiff's supplemental document lists general complaints about "oppression," the quantity and quality of food, poor sanitation of shower stalls, "foul foul smells emerging from specific cell units," and so on.[3] The Complaint in the present case, however, makes no mention of any such claims. Moreover, these "summary" allegations lack any supporting facts in the Complaint in this case, and in any event, fall quite short of stating a claim for relief. The Fourth Circuit Court of Appeals has instructed that giving "liberal construction" does not mean that the Court can ignore a pro se plaintiff's clear failure to allege facts that set forth a cognizable claim. *Wilson*, 699 F.3d at 797.

---

[3] Plaintiff's "conditions of confinement" claims have been addressed in Case No. 2:15-cv-3527-MBS-MGB.

D. "Seditious conspiracy"

Next, in his own words, plaintiff alleges the existence of a "seditious conspiracy to interfere in a Seven Year Preliminary Federal Investigation and a Civil Case pending in the 4th Circuit federal Court of Appeals." (DE# 1, ¶ IV). He does not identify any appellate case or set forth any coherent facts regarding any "seditious conspiracy" or how it relates to him personally.[4] In the present Complaint, he briefly states: "I was informed by solicitor Matt Hogge that it would be problem for him [plaintiff] to get in court due to my lock-up status." (*Id*.). Plaintiff concludes that "the destruction of pending tort action lawsuits against the Sixteenth Circuit Judicial Venue has been an act prohibited by York County Sheriff." (*Id*.). The allegations of the Complaint appear to be based on plaintiff's miscomprehension of counsel's comment. Such allegations fail to state any sort of plausible claim for "seditious conspiracy" by "the Sixteenth Circuit Judicial Venue" or the defendant Sheriff. Even liberally construing such allegations, it is not possible to discern any sort of coherent claim. Liberal construction of pro se complaints does not require "courts to conjure up questions never squarely presented to them." *Beaudett*, 775 F.2d at 1278. The Complaint is both frivolous and fails to state a claim for relief.

To the extent plaintiff may be attempting to sue the state courts and judges *en masse*, judicial immunity is not overcome by vague allegations of "corruption." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978).[5] Moreover, plaintiff cannot recover damages from judges for the performance of judicial duties. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991); *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir.1985) ("It has long been settled that a judge is absolutely immune from a

---

[4] In a letter filed in his other § 1983 action, plaintiff appears to refer to this alleged "conspiracy" by stating the "State Governor was ordered to pay to entire (sic) $7,000,000,000.00 – Seven Billion Dollars listed in a 5 year business policy plan maliciously obstructed, hindered, and delayed by the locally corrupted Sixteenth Circuit Judicial Venue of York County" and that "my present putative claim of political imprisonment is a claim established under estate, title, and rank as member of the United States Federal Government Body held for ransom!"

[5] Plaintiff complains about the state judiciary, but has named only one non-judicial defendant.

claim for damages arising out of his judicial actions."). Plaintiff cannot submit any additional facts through amendment or supplementation of the pleadings now under review that would remove the absolute immunity bar.

### E. Inappropriate Relief Sought

In addition to monetary damages in the amount of 12 billion dollars "FREE AND CLEAR," plaintiff asks for "complete press coverage, an order for a new judge and a trial date in his pending state criminal case, "a collateral proceeding to include all land, stock, and real properties," and immediate release from detention. Such relief is not available in a § 1983 action. This Court does not order "press coverage," nor will it interfere with pending state criminal proceedings. *See Younger v. Harris*, 401 U.S. 37 (1971). With respect to plaintiff's request for immediate release, "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994); *see also, e.g., Johnson v. Ozmint*, 567 F. Supp. 2d 806, 823 (D.S.C. 2008) (release from prison is not a remedy available under 42 U.S.C. § 1983).

### V. Recommendation

Accordingly, the Magistrate Judge recommends that the complaint (DE#1) be **summarily dismissed** with prejudice; the Complaint is both frivolous and fails to state a claim for relief, and therefore, dismissal of this Complaint counts as a "**strike**" for purposes of 28 U.S.C. § 1915(g).

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

October 7, 2015
Charleston, South Carolina

Petitioner's attention is directed to the *important notice* on the following page.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).